THE STATE OF KANSAS, *on the relation of P. C. Young, County Attorney of Wilson County,* v. THE CITY OF NEODESHA.

No. 56.

1. CITIES OF THIRD CLASS—*How and When Officers May be Enjoined.* Where the mayor and council of a city of the third class are doing or threatening to do an unlawful act in violation of the rights of the public, and the peace and good order of the city would be disturbed by such unlawful acts, the attorney-general or the county attorney is authorized to interfere in the name of the state to prevent the consummation of the impending evil which would result from carrying into effect such unlawful acts.

2. ——— *Powers of Mayor and Council.* The mayor and council of a city of the third class have the care, management and control of the city and its finances, and have power to enact such ordinances as they shall deem expedient for the good government of the city, the preservation of peace and good order, the suppression of vice and immorality, the benefit of trade and commerce, and to make such rules and regulations as may be necessary to carry their power into effect; to open and improve streets and make assessments upon the taxable property of the city to pay for the same; to build sidewalks along the streets and to make assessments upon abutting lots to pay for the same.

3. ——— *Determination of Mayor and Council Final.* The mayor and council are the only competent authority to determine what sidewalks, street crossings, bridges and other street improvements are necessary for the safety, security and convenience of the public, and when they have determined what improvements are necessary their determination is final, and cannot be inquired into in a proceeding to enjoin the construction of the same.

4. ——— *Power to Contract Indebtedness.* The mayor and council are not prohibited from making all needful and necessary improvements or repairs on the streets, and building sidewalks and street crossings, by reason of the want of ready funds to pay for the same. They are not limited in the amount of indebtedness they may contract for such improvements by reason of the per cent. they may assess on the property of the city.

5. ——— *How Certain Improvements Are Assessed and Paid.* The mayor and council, having authority to make improvements, cannot make the assessments to pay for the contemplated improvements until the walks are built. They must, in the first instance, contract for building and create the indebtedness, and then ascer-

tain the cost of the same. This must necessarily precede making the assessments on abutting lots to pay for the same. The indebtedness being created and assessments made, the mayor and council are authorized to issue warrants on the treasurer for the payment of the same, specifying the nature of the claim for which they are issued, and the fund out of which they are payable, and the treasurer must pay the same out of the proper funds, on presentation of the warrants, when he has money in his hands for the payment of such warrants.

MEMORANDUM.—Error from Wilson district court; L. STILLWELL, judge. Action by The State of Kansas, on the relation of P. C. Young, county attorney of Wilson county, against the City of Neodesha for an injunction. Judgment for defendant. Plaintiff brings the case to this court. Affirmed. The opinion herein was filed June 2, 1896.

The statement of the case, as made by JOHNSON, P. J., is as follows:

On the 20th day of September, 1894, the plaintiff in error commenced an action in the district court of Wilson county, Kansas, to enjoin the mayor and councilmen of the city of Neodesha, Kan., from contracting any more debts, and issuing scrip therefor, to build footwalks or sidewalks along and across the streets of said city. The petition alleges the following facts, upon which the injunction was requested:

"Now comes P. C. Young, county attorney of Wilson county, Kansas, in behalf of the citizens and taxpayers of Neodesha, a municipal corporation in said county and state, and says: (1) That said corporation is governed by a mayor and councilmen, and is a city of the third class; (2) that its bonded indebtedness is $12,000; (3) that its floating indebtedness is $3,008.41; (4) that of its floating indebtedness $473.12 has been created by this council this year; (5) that the taxable property of all kinds in said city is $144,749.86 as shown by the last assessment, and $124,000

for the previous year; (6) that the mayor and councilmen have issued scrip on the current fund for all the floating indebtedness, and which scrip — or city warrants — have been presented to the city treasurer for payment and payment refused for want of funds, and have been 'registered,' as provided by chapter 249 of the Laws of 1891, by an act of the legislature, being 'An act for the registration and payment of warrants issued by counties, cities, townships, school districts,' etc.    (7) Plaintiff further says the 'mayor and councilmen are threatening to, and are about to, let contracts and issue scrip on the current funds for building a large number of footwalks across the streets and alleys, and that they are also threatening and are about to construct a large amount of sidewalks under and by virtue of ordinances Nos. 102 and 103 lately passed by said mayor and councilmen, copies of which are herewith annexed and made a part hereof, and called 'A' and 'B,' and pay for the same in the first instance by issuing scrip on the current fund on the city treasurer, for the reason a large number of the lotowners cannot and will not build sidewalks under these ordinances, and because there is no money out of which to make an appropriation under ordinance No. 102.    And plaintiff says the amount of scrip said mayor and councilmen are about to issue for this purpose, in addition to what they have already issued, will be about $15,000, and that there is no money in the city treasury to pay any of the scrip or warrants issued as above stated, or that about to be issued, nor will the tax levy for the present fiscal year be large enough to pay the warrants or scrip already issued and registered, but that the same is now in excess of the limit within which the mayor and councilmen can lawfully create indebtedness and issue scrip therefor.    And plaintiff says this threatened expenditure and issue of scrip has never been authorized by a vote of the people of the city; that none of the sidewalks or cross-walks are necessary for the safety or security of the people. Plaintiff therefore prays an injunction may issue to

J. M. Keck, mayor of said city, and to Angus Stewart, R. P. Carpenter, T. Blakeslee, and A. O'Hara, councilmen of said city, to restrain and enjoin them from contracting any more debts, and issuing scrip therefor, to build footwalks or sidewalks, and for such other and further relief as plaintiff may be entitled to have."

To this petition the city of Neodesha interposed its demurrer, setting forth four grounds for demurrer thereto, as follows:

"(1) The plaintiff has no legal capacity to sue. (2) There is a defect of parties plaintiff. (3) Several causes of action are improperly joined. (4) Said petition does not state facts sufficient to constitute a cause of action.".

This demurrer was sustained and the cause dismissed. The plaintiff excepted and brings the case here for review.

*P. C. Young*, county attorney, *J. W. Sutherland*, and *J. K. Demoss*, for plaintiff in error.

*C. S. Reed*, for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.: This action was brought by the county attorney of Wilson county in the name of the state of Kansas, to restrain and enjoin the mayor and council of the city of Neodesha from contracting any more debts, and issuing scrip therefor, to build sidewalks or cross-walks over and along the streets in Neodesha, a city of the third class. The petition was filed in the district court of Wilson county, alleging the bonded indebtedness of the city, the amount of floating indebtedness, and the value of property of all kinds in the city subject to taxation; that for all the

floating indebtedness of the city scrip or warrants had been issued and presented to the city treasurer for payment, and payment refused for want of funds, and the warrants duly "registered," as provided in chapter 249, Laws of 1891; that there is no money in the city treasury to pay any of the scrip or warrants issued; that the warrants already issued and registered are now in excess of the limit within which the mayor and council can lawfully create indebtedness and issue scrip therefor. To this petition defendant demurred. The demurrer was sustained by the court and the action dismissed. The plaintiff excepted to the judgment of the court, and brings the case here for review.

The first objection raised by the demurrer is that the plaintiff has not the legal capacity to sue; that the state is not the real party in interest, and hence the suit cannot be maintained in the name of the state by the county attorney. This objection is not tenable. If the mayor and council were doing or threatening to do unlawful acts in violation of the rights of the public, and the peace and good order of the city would be disturbed by such unlawful acts, the attorney-general or the county attorney is the proper officer to interfere in the name of the state to prevent the consummation of the impending evil which will result from the carrying into effect of the unlawful acts of public officials. (*Craft v. Comm'rs of Jackson Co.*, 5 Kan. 518; *Bobbett v. The State, ex rel.*, 10 id. 9; *Bartlett v. The State*, 13 id. 99; *The State, ex rel., v. Faulkner*, 20 id. 541; *The State, ex rel., v. Comm'rs of Marion Co.*, 21 id. 419.)

The vital question in this case is: Does the petition show that the mayor and council were doing or threatening to do any act or thing not authorized by law?

Sections 35 and 36 of chapter 19*a*, General Statutes of 1889, (¶ ¶ 958, 959,) read :

"35. The mayor and council of each city governed by this act shall have the care, management and control of the city and its finances, and shall have power to enact, ordain, .alter, modify or repeal any and all ordinances not repugnant to the constitution and laws of the state,.and such as it shall deem expedient for the good government of the city, the preservation of the peace and good order, the suppression of vice and immorality, the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be necessary to carry such power into effect.

"36. The cities coming under the provisions of this act in their corporate capacities are authorized and empowered to enact ordinances for the following purposes, in addition to the other powers granted by this act : 1st. To levy and collect taxes for general revenue purposes, not to exceed 10 mills on the dollar in any one year, on all the real, mixed and personal property within the limits of said cities, taxable according to the laws of this state. 2d. To open and improve streets, avenues and alleys, make sidewalks and build bridges, culverts and sewers within the city, and for the purpose of paying for the same shall have power to make assessments in the following manner, to wit : *First.* For opening, widening and grading all streets and avenues, and for all improvements of the squares and areas formed by the crossing of streets, and for building bridges, culverts and sewers, and footwalks across streets, the assessments shall be made on all taxable real estate within the corporate limits of the city, not exceeding 10 mills on the dollar, for these purposes, in any one year. *Second.* For making and repairing sidewalks, macadamizing, curbing, paving and guttering, the assessments shall be made on all lots and pieces of ground abutting on the improvements, according to the front foot thereof."

In accordance with the provisions of the statute re-

lating to cities of the third class, the mayor and council passed an ordinance providing for the construction of sidewalks and street crossings along and over certain streets in the city, giving the dimensions of the walks, the material of which they were to be composed, and defining the duties of the street commissioner in relation to building the same, requiring him to notify the owners or occupants of abutting lots of the provisions of the ordinance, to notify them to build the same within a certain period, and, in case the owners or occupants of abutting lots neglected or refused to construct the walks within 20 days after the notice, then to build said walks, or cause the same to be built, and report the cost thereof to the council for assessment. The mayor and council also passed an ordinance ordering the building of certain sidewalks and street crossings in accordance with the former ordinances relating to the construction of walks and crossings.

It is not claimed by the plaintiff that the mayor and council were not authorized to build sidewalks and street crossings in the city, but that the indebtedness of the city had already reached the limits to which the mayor and council could contract, and that they were not authorized to build sidewalks and streetcrossings and issue the warrants of the city to pay for the same out of the current fund of the city; that none of the sidewalks or cross-walks are necessary for the safety or security of the people, and that the question of the building of said sidewalks and cross-walks and creating said indebtedness has never been authorized by a vote of the people of said city.

The mayor and council are the only competent authority to determine what sidewalks, street cross-

ings, bridges and other street improvements are necessary for the safety, security and convenience of the public, and when they have determined what improvements are necessary their determination is final, and cannot be inquired into in a proceeding to enjoin the construction of the same.   It is not necessary for them to submit the question of street improvements to a vote of the people of the city, but they are authorized to make the improvements, and create the indebtedness of the city for the payment of the same. The mayor and council have the care, management and control of the city and its finances, and have the power to open and improve streets, avenues, and alleys, make sidewalks, build bridges, culverts, and sewers, and, for the purpose of paying for the same, have the power to make assessments in the following manner :

"*First.* For opening, widening and grading all streets and avenues, and for all improvements of squares and areas formed by the crossing of streets, and for building bridges, culverts and sewers, and footwalks across streets, the assessments shall be made on all taxable real estate within the corporate limits of the city, not exceeding 10 mills on the dollar, for these purposes, in any one year.   *Second.* For making and repairing sidewalks, macadamizing, curbing, paving and guttering, the assessments shall be made on all lots and pieces of ground abutting on the improvements, according to the front foot thereof." (Gen. Stat. 1889, ¶ 959.)

We do not think the mayor and councilmen are prohibited from making all needful and necessary improvements or repairs on the streets and building sidewalks and street-crossings by reason of want of ready funds to pay for the same.   They are not limited in the amount of indebtedness that they may

contract for such improvements by reason of the per cent. they may assess on the property of the city. Section 1 of chapter 249, Laws of 1891, provides:

"All warrants shall be drawn to the order of the person or persons entitled to receive the same, and shall specify the nature of the claim or service for which they were issued, and out of what fund payable; and the term 'warrants,' as used in this act, shall be understood to include all orders of any kind or description authorized by law to be drawn on public treasurers for money payments."

Sections 6 and 7 of the same chapter read:

" SEC. 6.   It shall be the duty of the treasurer of any county, city, township, school district or board of education to pay on presentation any warrant properly drawn on any fund in his custody by virtue of his office, and when paid write across the face of such warrant the word 'paid,' in red ink, and sign the same : *Provided,* That there is sufficient money in his possession belonging to the fund upon which such warrant is drawn to pay the same.

"SEC. 7. In case there is not sufficient money in the hands of such treasurer to pay any warrant when presented, he shall indorse thereon a proper registered number, in the regular order of its presentation, and the words, 'Presented and not paid for want of funds,' with date, and sign said indorsement; and he shall record in his warrant register the number, amount and date of all such warrants, to whom payable, and the date when presented for payment, and their registered number as indorsed thereon, and such warrants shall be paid in the order of their presentation as shown by such register; and no warrants shall be received for taxes by any county treasurer unless he shall have in cash a sufficient sum to redeem all warrants having such priority over the warrants so offered for taxes."

The ordinances attached to the plaintiff's petition provide that "when the sidewalks have been built by

the city the street commissioner shall report the cost thereof to the council for assessment''; and when the assessment is made against the abutting property and the taxes are collected therefor, it becomes a fund in the hands of the city treasurer for the payment of the warrants issued for building the sidewalks. All warrants issued by the city must specify the nature of the claim or services for which they were issued, and out of what funds payable, and the city treasurer must pay on presentation any warrant properly drawn on any fund in his custody; and, in case there is not sufficient money in his hands to pay any warrant when presented, he shall indorse thereon the proper registered number in the regular order of its presentation, and the words "Presented and not paid for want of funds," giving date of same, and record the warrant in his register.

It is urged by the plaintiff that the mayor and council are threatening to let contracts and make the improvements complained of, and create the indebtedness therefor, and pay for the same out of the money raised by taxation for general revenue purposes, and in violation of the constitution, which prohibits the diversion of money raised by taxation from the object for which it was levied. It is true the petition alleges that they are threatening and are about to let contracts, create the indebtedness, and issue scrip on the current fund for making the improvements. We must assume that the mayor and council will not issue warrants in any other manner than authorized by chapter 249, Laws of 1891, which shall specify the nature of the claim or service for which they were issued, and out of what fund payable. The ordinances provided for making assessments to pay for the improvements, and they are a part of the petition and must be con-

sidered in determining the allegations contained in the petition itself. Taking the allegations of the petition and the provisions of the ordinances, it is manifest that the mayor and council of Neodesha have determined that certain sidewalks and street crossings are necessary to the safety and convenience of the people of that city, and have provided by ordinance for building the same, and, in the first instance, have given the owners or occupants of the property subject to the burden of constructing the same the right to build the walks along the front of their lots abutting thereon, and, in case of failure or refusal to do so, have authorized them to be built by the city, and the cost thereof to be charged against the abutting property, and when assessed against the property liable to pay for building the same, and collected, it becomes a fund to pay for building the walks. The mayor and council, having authority to make the improvements, cannot make the assessment to pay for the contemplated improvements until the walks are built. They must, in the first instance, contract for building and create the indebtedness, and then ascertain the cost of the same. This must necessarily precede making the assessments to pay for the same. The indebtedness being created and assessments made, the mayor and council are authorized to issue warrants on the treasurer for the payment of the same, specifying the nature of the claim for which they are issued and the fund out of which they are payable, and the treasurer must pay the same out of the proper fund, upon presentation of the warrant.

Upon a fair construction of the petition and the ordinances thereto attached, and the law, we do not think there will be any attempt to divert the money

in the hands of the city treasurer to any other object than that for which it was levied.

The judgment of the district court is affirmed.

All the Judges concurring.