The State, *ex rel.*, v. Doane.

No. 20,786.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Plaintiff*, V. JOHN DOANE, as County Clerk of Osborne County, *Defendant;* R. M. CRUM, as County Superintendent of Sedgwick County, *Intervenor.*

### SYLLABUS BY THE COURT.

1. COUNTY OFFICE—*Created by Constitution—To be Filled by Election—Electors Entitled to Vote.* Where the constitution creates a county office to be filled by election, the electors defined by the constitution are the electors by whose suffrage such office is to be filled.

2. SAME—*Legislature no Power to Abridge Right of Suffrage.* It is not within the power of the legislature to abridge the right of suffrage for an officer created by the constitution when that instrument prescribes that such officer shall be chosen by election.

3. COUNTY SUPERINTENDENT—*Constitutional Office—Election by Electors of Entire County Including Cities.* Since the constitution defines the qualifications of electors (Const., art. 5, § 1) and provides that "a superintendent of public instruction shall be elected in each county" (Const., art. 6, § 1) a statute restricting the right of suffrage for such officer to electors of the county residing in the county territory lying outside the cities of the first and second class and abrogating the right of the qualified electors of such cities to vote for such officer is unconstitutional and void.

4. SAME—*Mandamus—State Properly Party Plaintiff.* Where a question arises as to the constitutionality of a statute, the state is interested; and its name may be lawfully invoked by the attorney-general or county attorney to maintain an appropriate action to have the matter adjudicated.

Original proceeding in mandamus. Opinion filed June 15, 1916. Writ allowed.

*S. M. Brewster*, attorney-general, *S. N. Hawkes*, and *John L. Hunt*, assistants attorney-general, for the plaintiff.

No appearance was made for the defendant.

*T. D. Humphreys*, of Topeka, for the intervenor.

The opinion of the court was delivered by

DAWSON, J.: This is an original proceeding to test the constitutionality of chapter 210 of the Laws of 1915, and it takes the form of an application for a writ of mandamus to require

a county clerk to file primary election petitions which are regular under other statutes, but which ignore the provisions of the act in question. The act, in part, reads:

"An act relating to the nomination and election of county superintendent of public instruction.

"SECTION 1. In any primary election held for the purpose of nominating candidates for county offices and in any general election held for the election of county officers the right to vote for candidates for the office of county superintendent of public instruction shall be restricted to the qualified electors residing in said county and not residing in any city of the first or second class; and the ballots prepared for use in cities of the first and second class in said primary or general election shall not contain the names of candidates for the office of county superintendent of public instruction; provided, that nothing in this act shall disqualify a person residing in any portion of the county from being elected to the office of county superintendent."

The county clerk of Osborne county declines to file and certify the name of Bertha L. Yoxall as a candidate for the office of county superintendent or to cause her name to be printed on the ballots at the ensuing primary election because her nominating petitions are largely signed by residents of Osborne, a city of the second class. The state, through its chief law officer, takes the position that the act is in violation of the constitution, particularly section 1 of article 5 and section 1 of article 6, and inferentially section 19 of article 2, section 2 of article 9, and section 1 of article 15, and that the nomination and election of county superintendents must proceed as heretofore and without regard to this act of 1915.

The intervenor, R. M. Crum, is a candidate for the office of county superintendent in Sedgwick county and is interested in the proper interpretation of the act, and argues in favor of its validity. Indeed it may be proper to say that the idea expressed in the act has been more or less popular for many years, and teachers' associations and kindred societies interested in rural education have frequently endorsed the proposition. Cities of the first and second class are provided with superintendents of schools, and consequently it has been popularly supposed that such city voters have little concern with the qualifications of county superintendents, and it has been a more or less prevalent idea that the rural school interests have suffered on that account, and that perhaps a class of

county superintendents more deeply interested in the welfare of rural schools would be chosen if their election depended wholly upon the suffrages of the people who reside in the rural districts of the county, or at least outside the cities of the first and second class. But we are only concerned with the constitutionality of this act. It would not help the proposition for us to concede its wisdom or desirability.

The legislature from time to time has prescribed special qualifications for county superintendents. Prior to 1899, it seems that any person qualified to hold any office might aspire to and hold the office of county superintendent. (Laws 1899, ch. 245, § 1.) In that year, the legislature enacted that only a teacher of eighteen months' experience or more, and holding a second-grade teacher's certificate or something better would be eligible to the office, but excused persons then holding the office of county superintendent from such qualifications. (Gen. Stat. 1901, § 6099.) In 1903, these qualifications were slightly changed. (Laws 1903, ch. 202.) The standard of qualifications was again elevated in 1907, when chapter 167 of the Laws of 1907 was enacted. That statute reads:

"That a person to be eligible to the office of county superintendent of public instruction must hold a professional certificate, first-grade certificate, or a state certificate, or be a graduate of an accredited college or normal school, and must have taught at least eighteen months: Provided, That this act shall not apply to any persons now holding the office of county superintendent or to any person who is now a county superintendent elect." (Gen. Stat. 1909, § 7379.)

Doubtless the power of the legislature to prescribe qualifications for county superintendents is not yet exhausted; and it might be entirely competent, for example, for the legislature to prescribe that county superintendents should have a reasonable experience in the teaching of rural schools next precedent to their induction into the office of county superintendent. (Gen. Stat. 1909, § 2225; *Hanson v. Gratton,* 84 Kan. 843, 115 Pac. 646; 29 Cyc. 1376, 1377.)

But here we do not have to consider the qualifications of the officer but the qualifications of those whose suffrages select the officer. The constitution defines the qualifications of voters:

"Every [white] male person of twenty-one years and upwards belonging to either of the following classes—who shall have resided in Kansas six months next preceding any election, and in the township or

ward in which he offers to vote at least thirty days next preceding election —shall be deemed a qualified elector:

"1st. Citizens of the United States;

"2d. Persons of foreign birth who shall have declared their intention to become citizens conformably to the laws of the United States on the subject of naturalization." (Const., art. 5, § 1.)

The word "white" was nullified by the fifteenth amendment to the constitution of the United States, March 30, 1870.

"The rights of citizens of the state of Kansas to vote and hold office shall not be denied or abridged on account of sex." (Suffrage Amendment adopted November, 1912; Laws 1911, ch. 337, § 1.)

The county superintendent is a constitutional officer. Section 1 of article 6 of the constitution, in part, reads:

"A superintendent of public instruction shall be elected in each county, whose term of office shall be two years, and whose duties and compensation shall be prescribed by law."

Other incidental provisions of the constitution read:

"The legislature . . . shall have the power to provide for the election or appointment of all officers, and the filling of all vacancies not otherwise provided for in this constitution." (Const., art. 2, § 19.)

"The legislature shall provide for such county and township officers as may be necessary." (Const., art. 9, § 2.)

"All officers whose election or appointment is not otherwise provided for shall be chosen or appointed as may be prescribed by law." (Const., art. 15, § 1.)

A considerable number of county offices are created by statutes and not by the constitution and it is clearly within the power of the legislature to provide for the election or appointment of all mere statutory officers in any reasonable manner; but it is also clear that where the constitution itself creates the office and provides that the holder of such office shall be elected, the electors defined by the constitution are the voters for such officer and their right of suffrage for that office can not be abridged by the legislature. On this point the authorities appear to be uniform, and none are cited by counsel to the contrary. In 1876, a question arose touching the right of a woman to hold the office of county superintendent, it being argued that there was some coördinate relation between office-holding and voting. This was denied by the court, and it was held that a woman was eligible although she

was not then, nor until thirty-six years later, a qualified elector. But in the opinion Mr. Justice Brewer said:

"And in all these cases where the people have restricted their power by prescribing the qualifications of those to make the choice of officers, they can not, except by an amendment of the same instrument, add to or take from those restrictions." (*Wright v Noell,* 16 Kan. 601, 603.)

This observation was but an elementary statement of thoroughly established law. In *Wheeler v. Brady,* 15 Kan. 26, where the question of qualifications of electors of school district officers was under discussion, it was said:

"If said section [Const., art. 5, § 1] applies, then this right to vote . . . is a constitutional right, which can not be abridged by the legislature, or by any other power except the entire people of the state by way of amendment to the constitution." (p. 32.)

Elsewhere in the same opinion it was said:

"The constitution provides for two, and only two, elections, to be held by the people, to-wit, general elections, and township elections, (Const. art. 4, § 2;) and it does not anywhere even mention school-district elections or meetings. It provides for, or at least recognizes, the election of various officers; First, all the state officers provided for by the constitution, to-wit, the governor, lieutenant governor, secretary of state, auditor, treasurer, attorney general, and superintendent of public instruction, (Const. art. 1, §§ 1, 2, 14;) . . . eighth, county superintendent of public instruction (Const. art. 6, § 1)." (pp. 30, 31.)

In *The State v. Monahan,* 72 Kan. 492, 84 Pac. 130, where a statute restricting the qualifications of electors for drainage district officers was under consideration, it was said:

"The decision [in *Wheeler v. Brady,* 15 Kan. 26] was based upon the principle that the constitutional expressions concerning the privilege of voting were intended to apply only to those elections provided for by the constitution itself. . . . It is universally held that the enumeration in a state constitution of the classes of citizens who shall be permitted to vote is to be taken as to all matters within the purview of the provision as a complete and final test of the right to the exercise of that privilege, and that the legislature can neither take from nor add to the qualifications there set out. (15 Cyc. 281, 282, 298; 10 A. & E. Encycl. of L. 573, 576, 577.)" (pp. 494, 495.)

In section 72 of the second edition of McCrary on Elections it is, in part, said:

"The doctrine that the legislature can not add to the constitutional qualifications of voters is founded upon the well settled rule of construction that when the Constitution specifies the circumstances under which a right may be exercised, or a penalty imposed, the specification

is an implied prohibition against legislative interference, to add to the condition or to extend the penalty to other cases. (Cooley's Constitutional Limitations, 64. *Rison v. Fair*, 24 Ark. 161.)"

In Cooley's Constitutional Limitations, 7th ed., p. 902, it is said:

"Wherever the constitution has prescribed the qualifications of electors, they can not be changed or added to by the legislature, or otherwise than by an amendment of the constitution."

The case of *St. Jo. & Denv. City R. R. Co. v. Buchanan Co. Ct.*, 39 Mo. 485, is in point. In that case the legislature of Missouri by statute provided that a county might issue bonds to aid a railroad company if the bonds were authorized by a vote of the *taxable* inhabitants. The constitution of Missouri had defined the qualifications of electors, and these did not include a qualification contingent on taxation. The court held that the legislature could not engraft additional restrictions upon the constitutional right of suffrage and held the act void.

To the same effect are *Opinion of Justices*, 117 Mass. 603; *The People v. Raymond*, 37 N. Y. 428; *People, ex rel., Bolton et al. v. Albertson*, 55 N. Y. 50; *Monroe et al. v. Collins*, 17 Ohio St. 665; *State v. Constantine*, 42 Ohio St. 437, 51 Am. Rep. 833; *The Sate, ex rel. Wood v. Goldstucker and another*, 40 Wis. 124.

In our study of this question we have noticed a distinction between *regulation* and *restriction* of the right of suffrage. The registration laws being mere exercise of the police power to regulate and preserve the purity of elections are usually upheld, while statutes restricting the constitutional right to vote are invariably void.

Some minor matters presented may be briefly disposed of. The state is a proper party—indeed *the* proper party—to bring this action. The state is always *interested* where the integrity of its constitution or statutes is involved.

"It has an interest in seeing that the will of the legislature is not disregarded, and need not, as an individual plaintiff must, show grounds of fearing more specific injury. (*The State v. Kansas City*, 60 Kan. 518, 57 Pac. 118." (*The State v. Lawrence*, 80 Kan. 707, 103 Pac. 839.)

Where the constitutionality of a statute is in doubt, the state's law officer, its attorney-general or county attorney, may exercise his best judgment as to what sort of action he

will bring to have the matter determined, either by quo warranto to challenge its validity (*The State v. Johnson,* 61 Kan. 803, 60 Pac. 1068) ; by mandamus to compel obedience to its terms (*The State v. Dolley,* 82 Kan. 533, 108 Pac. 846) ; or by injunction to restrain proceedings under its questionable provisions (*The State, ex rel., v. City of Neodesha,* 3 Kan. App. 319, 45 Pac. 122).

While it is not necessary for the determination of this act, counsel for the state cite many statutes showing that the people of the entire county, those living in cities of the first and second class as well as those in the rural districts, are concerned in the election of the county superintendent of public instruction. The county pays the superintendent's salary. (Laws 1913, ch. 197, § 5.) The county superintendent has jurisdiction over Barnes high schools. (Gen. Stat. 1909, §§ 7767, 7796, 7797.) This officer has duties pertaining to county levies to aid certain schools. (Laws 1911, ch. 263.) He is president of the board of trustees of county high schools (Gen. Stat. 1909, § 7769), with power to make county levies for their support (Gen. Stat. 1909, § 7770). He apportions the annual and county school funds to both city and rural school districts. (Gen. Stat. 1909, § 7382.) Many other duties which affect the entire county more or less are imposed on this officer by sections 7430, 7509, and 7763 of the General Statutes of 1909; chapters 263 and 268 of the Laws of 1911; and chapter 300 of the Laws of 1915.

It must be held that chapter 210 of the Laws of 1915 which restricts the right of suffrage for superintendent of public instruction to electors residing outside cities of the first and second class and excludes the suffrage rights of residents of such cities is a clear infringement of the constitutional right of suffrage conferred upon all the qualified electors of the county, and is therefore void.

The writ is allowed.